George M. HANEY, Jr., et al., Appellants,

v.

MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Appellee.

No. 922.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 30, 1974.

Rehearing Denied Feb. 20, 1974.

Ronald M. Gipson, Dibrell, Dibrell, Greer & Brown, Galveston, for appellants.

John Eckel, Mills, Shirley, McMicken & Eckel, Galveston, for appellee.

TUNKS, Chief Justice.

On January 18, 1967, the appellee, Minnesota Mutual Life Insurance Company, issued a group credit life insurance policy on the life of George M. Haney, Sr. Guaranty Federal Savings & Loan Association was the beneficiary of the policy, which was in the amount of $5,452.36, the balance payable on a loan from Guaranty to the insured. The insured died on March 22, 1967. The appellee refused to pay the benefits under the policy. George M. Haney, Jr., and Joseph L. Haney, assignees of the benefits under the policy, filed suit to recover those benefits. A jury trial in the district court resulted in a judgment for the insurance company, and the assignees of the policy's benefits have appealed.

The principal defense asserted by the insurance company related to false statements made by the insured on his written application for insurance. In that application he was asked, "Do you know of any impairment now existing in your health or physical condition?" He answered "No." It also asked whether the applicant had consulted a physician because of illness

within the three years previous. That question was answered in the affirmative. The application form instructed that if either of those two questions were answered in the affirmative the applicant should "give particulars including the name & address of physician and dates attended." Pursuant to that instruction the insured stated as to his affirmative answer, "Dr. E. S. McLarty, Sr. 7/8/64. St. Mary's Infirmary, Galveston, Texas. Removal of hemorrhoids."

(The answers to the questions in the application form were actually made by Mrs. Haney, the insured's wife, with the authority of the insured. No point of error by appellants renders that fact significant, as distinguished from the answers having been made by the insured himself.)

With reference to the first of the two questions on the application, the jury's answers to special issues, and their numbers, were as follows:

3. The answer was false.

4. It was known by Mrs. Haney to be false.

5. It was not known by Mr. Haney to be false.

6. It was made for the purpose of inducing the insurer to issue the insurance.

7. It was relied on by the insurer.

8. It was material to the risk.

Special issue 9 was predicated on an affirmative answer to special issue 6. It asked if the answer "was made with the intent to deceive the defendant?" That issue was not answered by the jury. The record does not show that any objection was made to the court's receipt of the verdict without such an answer.

Parallel responses were made to issues as to the falsity of the particulars given regarding the insured's affirmative answer to the second question in the application.

The appellants make no point of error as to the evidentiary support for any of the jury's answers to the special issues submitted.

Appellants' first contention is that the very terms of the insurance contract call for the payment of benefits, even in the event of material misrepresentation. This argument is founded upon section 12 in the contract which reads:

"12. MISSTATEMENT OF AGE OR OTHER DATA

If the calendar year of birth, amount of premium, amount of unmatured principal balance, amount of insurance, or any other relevant data is found to have been misstated, the amount of insurance hereunder, except as hereafter provided, shall nevertheless be the amount provided under the section entitled 'Amount of Insurance.' Premiums shall be adjusted so that the correct premiums shall be paid for the insurance actually provided. Any additional premiums due the Company under this provision may be deducted from the insurance proceeds payable by the Company. . . ."

This section appears to conflict with section 21, which is captioned, "Incontestability," and provides in part that:

"[N]o statement made by any insured debtor relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made . . . unless it is contained in a written application signed by him."

 Appellants argue that any ambiguities in an insurance contract are to be construed in favor of the insured and that any misrepresentations should therefore result only in an adjustment of the premiums. Applying the rules of construction applicable to contracts we must view the entire contract in order to determine whether the contract is actually ambiguous on its face. To ascertain the meaning of

the phrase in section 12, "or any other relevant data," it is necessary only to apply the principle of ejusdem generis. Where there is a list of certain specific items, followed by general words, the general words are held to refer to the same class of items as those items specifically mentioned. Galveston, H. & H. R. Co. v. Anderson, 229 S.W. 998 (Tex.Civ.App.—Galveston 1920, writ ref'd). The specific items listed in the quoted section 12 are items that relate to the amount of the premium to be charged. Accordingly, we hold that the above phrase from section 12 refers to misstatements concerning other items which are similar to those enumerated, for which there would be a reasonable procedure for adjusting premiums. The evidence in this case is to the effect that Mr. Haney had high blood pressure and that had the insurance company been apprised of that fact, it would not have incurred the risk. Under section 21 of the contract the insurance company was authorized to contest the validity of the policy on the ground of material misrepresentation in the application which related to Mr. Haney's insurability.

■■ Appellants also urge that the appellee failed to plead and prove the defense of fraudulent misrepresentation. To avoid a policy under this theory it is incumbent upon the insurance company to prove that the insured made material misrepresentations "willfully and with design to deceive or defraud." Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W. 2d 820, 822 (1947). The requirement of intent to deceive has remained firmly entrenched as an important element of this defense. In this case the jury failed to answer the two issues asking whether the false statements in the application were made with intent to deceive. These issues were predicated upon "We do" answers to the issues inquiring as to whether the statements were false. The jury did answer the falsity issues "We do," but still failed to answer the issues concerning intent to deceive. These unanswered issues were cumulative. The jury findings of the

making of known false statements, with intent to induce action on the part of the insurance company, amounted to a finding of an intent to deceive. Allen v. American National Insurance Company, 380 S.W.2d 604 (Tex.Sup.1964); Texas Industrial Trust v. Lusk, 312 S.W.2d 324 (Tex.Civ. App.—San Antonio 1958, writ ref'd). The Supreme Court said, in explanation of Lusk,

> "The Court there was talking about a statement made with the knowledge that it was false and not with a representation that was negligently or carelessly made." Allen v. American National Insurance Company, *supra,* 380 S.W.2d at 608.

Apparently, a finding of the making of a known false statement would not encompass false statements which are made in mistake. It has also been said that to avoid paying benefits because of misrepresentations, "the insured must have made them with knowledge of their falsity *or* with an intent to deceive." Allen v. American National Insurance Company, *supra* at 608, citing G. Couch, Cyclopedia of Insurance Law, sec. 37:101 at 452 (2d ed. 1961) (emphasis added). For the above reasons we hold that the jury findings sufficiently embodied the requisite bad faith on the part of the insurance applicant for a valid defense of material misrepresentation.

■ Furthermore, appellants did not object to the failure of the jury to answer the issues on intent to deceive. To preserve error arising out of an incomplete verdict that will sustain a judgment for the opposite party, the aggrieved party must object before the discharge of the jury. Lewis v. Texas Employers' Ins. Ass'n, 151 Tex. 95, 246 S.W.2d 599 (1952).

■ Appellants also contend that the appellee is precluded from defending on the basis of material misrepresentations by the insured in the application, because a copy of the application was not attached to the policy which was delivered to the insured. The jury found that the application was furnished to Guaranty. Tex.Ins.Code

Ann. art. 3.50 sec. 2(3), V.A.T.S. (Supp. 1972) provides:

"[N]o statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary."

In Industrial Life Ins. Co. v. First Nat. Bank of Perryton, 449 S.W.2d 129, 132 (Tex.Civ.App.—Tyler 1969, no writ), it was said that the purpose of this provision is to allow the insured to "correct any error which might vitiate the policy." Appellants' argument that such a purpose would be frustrated by a requirement that the application be furnished only to the beneficiary is true, but it must be noted that in that case the holding was based upon the fact that the application was not furnished to either the beneficiary or the insured. The clear wording of the statute is complied with by furnishing a copy of the application to the beneficiary.

Appellants' remaining points have been given consideration and are overruled.

Affirmed.